## GEORGE N. COLLATOS *vs.* BOSTON RETIREMENT BOARD & another.[1]

Norfolk. December 4, 1985. — February 5, 1986.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Statute,* Construction. *Public Employment,* Forfeiture of retirement benefits.

General Laws c. 32, § 15 (3A), providing for forfeiture of retirement benefits by a public employee convicted of extortion or accepting bribes in violation of c. 268A, § 2, or convicted of extortion in relation to police or licensing duties in violation of c. 265, § 25, was not applicable to a former public employee who was convicted in a Federal court of obstructing commerce by extortion in violation of 18 U.S.C. § 1951(a) (1982). [686-688]

CIVIL ACTION commenced in the Superior Court Department on September 23, 1983.

The case was heard by *John D. Sheehan,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Marie M. Lawlor,* Assistant Corporation Counsel, for the city of Boston, intervener.

*Donald K. Stern* for the plaintiff.

*James F. O'Donnell,* for Boston Retirement Board, submitted a brief.

LIACOS, J. The outcome of this appeal depends on our interpretation of G. L. c. 32, § 15 (3A) (1984 ed.), a statute mandating the forfeiture of retirement benefits by public employees who have been convicted of certain offenses. The parties filed cross motions for summary judgment in the Superior Court. Judgment was entered for the plaintiff. The

---

[1] The city of Boston, intervener.

defendants appealed. We transferred the appeal to this court on our own motion.

The defendants argue that the language of the statute is to be construed broadly, so that conviction of a Federal offense will result in forfeiture of benefits. The plaintiff argues that the statute may be applied only to those persons convicted of the specific offenses designated by the Legislature. We agree with the latter contention, and affirm.

The plaintiff, George N. Collatos (Collatos), was an employee of the Boston Redevelopment Authority who submitted his resignation on March 2, 1982, to be effective on March 15, 1982. Two days after the effective date of his resignation, Collatos pleaded guilty and was convicted in the United States District Court of a violation of 18 U.S.C. § 1951 (1982).[2] Nevertheless, the Boston retirement board (Board) approved Collatos's superannuation retirement application on July 22, 1982, and he began receiving his retirement benefits as of the effective date of his resignation. On January 4, 1983, G. L. c. 32, § 15 (3A), became effective.[3] On August 29, 1983, the Board notified Collatos that his retirement benefits were terminated by a vote of the Board as of August 22, 1983.[4] The Board's decision followed an opinion of the corporation counsel of the city of Boston (city) that G. L. c. 32, § 15 (3A), required termination of benefits.

---

[2] "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951 (a) (1982). This section is popularly known as the "Hobbs Act."

[3] "In no event shall any member after final conviction of an offense set forth in section two of chapter two hundred and sixty-eight A or section twenty-five of chapter two hundred and sixty-five pertaining to police or licensing duties be entitled to receive a retirement allowance or a return of his accumulated total deductions under the provisions of sections one to twenty-eight, inclusive, nor shall any beneficiary be entitled to receive any benefits under such provisions on account of such member." G. L. c. 32, § 15 (3A) (1984 ed.), inserted by St. 1982, c. 630, § 20.

[4] The parties addressed the question of the retroactive application of the statute, but we find it unnecessary to reach that question.

Collatos filed a complaint against the Board seeking a declaration that the Board's action was unlawful. The city was allowed to intervene. The parties then filed a statement of agreed facts. The trial judge granted Collatos's motion for summary judgment.

It is "[w]ell established . . . that '[t]he duty of statutory interpretation is for the courts.' *Cleary* v. *Cardullo's Inc.*, 347 Mass. 337, 344 (1964)." *Casey* v. *Massachusetts Elec. Co.*, 392 Mass. 876, 879 (1984). The language of the statute is clear and unambiguous. *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983). *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). The statute imposes a penalty on employees convicted of certain offenses. In addition to the punishment provided for the violation of G. L. c. 268A, the Legislature sought to enforce the criminal law by suspending the sword of retirement benefits forfeiture over those employees who otherwise might be tempted to transgress. As further punishment for the abuse of their public positions, convicted employees lose not only the benefits of the public-employee retirement system but also the return of their "accumulated total deductions." G. L. c. 32, § 15 (3A).

A statute designed to enforce the law by punishing offenders, rather than simply by enforcing restitution to those damaged, is in the nature of a penal statute. See 3 C. Sands, Sutherland Statutory Construction § 59.01 (4th ed. 1974). Cf. *Brown* v. *Taunton,* 16 Mass. App. Ct. 614, 618-619 (1983) (construing the forfeiture provisions of G. L. c. 268A, § 25). Forfeiture of property, though it may also have the purpose of preventing further illicit activity involving the property, is punitive. *Commonwealth* v. *One 1972 Chevrolet Van,* 385 Mass. 198, 201 (1982). Statutes seeking to protect the public, or society as a whole, against injury are commonly viewed as penal in nature. *Sackett* v. *Sackett,* 8 Pick. 309, 319 (1829). 3 C. Sands, *supra.*

It is an ancient rule, to which we have long adhered, that "[p]enal statutes must be construed strictly 'and not extended by equity, or by the probable or supposed intention of the legislature as derived from doubtful words; but that in order to charge a party with a penalty, he must be brought within its operation, as manifested by express words or necessary impli-

cation.'" *Libby* v. *New York, N.H. & H. R.R.,* 273 Mass.
522, 525-526 (1930), quoting *Cleaveland* v. *Norton,* 6 Cush.
380, 383 (1851). *Commonwealth* v. *Clinton,* 374 Mass. 719,
721 (1978). *Commonwealth* v. *Hayden,* 211 Mass. 296, 297
(1912). We examine the statute, therefore, particularly mindful
that its words are not to be stretched to accomplish a result
not expressed.

The statute operates "after final conviction of an offense set
forth in section two of chapter two hundred and sixty-eight A
or section twenty-five of chapter two hundred and sixty-five
pertaining to police or licensing duties." G. L. c. 32, § 15
(3A). The Legislature has chosen two crimes that are to be
enforced by the additional mechanism of § 15 (3A), and it has
precisely denoted them. Not only is the statute specific in
enumerating the particular statutory violations triggering its
operation, but it specifies that only a portion of one of the two
enumerated sections is involved. The Legislature recognized
the exactitude required in a penal statute, and the language of
the statute demonstrates the necessary particularity. Thus, it
is appropriate to follow the maxim that the statutory expression
of one thing is an implied exclusion of other things omitted
from the statute. *County of Middlesex* v. *Newton,* 13 Mass.
App. Ct. 538, 542 (1982). Cf. *Brady* v. *Brady,* 380 Mass.
480, 484 (1980).

The Legislature, specifying the crimes to which the statute
would apply, used the term "set forth," which, as two Federal
courts have said in unrelated circumstances, is a precise term
meaning "disclose in full, clear, concise and exact terms,"
*Union Carbide Corp.* v. *Borg-Warner Corp.,* 550 F.2d 355,
360 (6th Cir. 1977) (patent case), and denotes a specific, not
general, idea, *Cohen* v. *United States,* 366 F.2d 363, 368 (9th
Cir. 1966) (directions to counsel in formulating requests for
jury instructions), cert. denied, 385 U.S. 1035 (1967). We
presume, as we must, that the Legislature intended what the
words of the statute say. *Condon* v. *Haitsma,* 325 Mass. 371,
373 (1950). The Legislature well knows how to use a Federal
conviction to trigger a legal consequence, see, e.g., G. L.
c. 279, § 30 (1984 ed.) (Federal conviction results in loss of State

office), and the lack of such language here is an indication that no such result was intended. Even if the Legislature did not foresee the possibility of a public employee who might have been convicted under one of the two enumerated Massachusetts statutes being convicted under an arguably equivalent Federal statute, it is not our function judicially to amend the statute to cover this eventuality. *Thacher* v. *Secretary of the Commonwealth,* 250 Mass. 188, 190-191 (1924).

*Judgment affirmed.*