FIDELITY AND DEPOSIT COMPANY OF MARYLAND *vs.* RICHARD
SPROULES & another.[1]

No. 02-P-523.

Norfolk. June 12, 2003. - December 2, 2003.

Present: Cowin, Mills, & Green, JJ.

*Statute,* Construction. *Public Employment,* Forfeiture of retirement benefits,
Police, Misconduct. *Police,* Retirement. *Retirement. Municipal Corpora-
tions,* Retirement board, Insurance. *Restitution. Insurance,* Subrogation.
*Subrogation.*

In a civil action brought by an insurance company against a city's former
chief of police for reimbursement of monies that the insurer paid to the
city for losses arising from the former chief's criminal activities, in which
the insurer joined the city's retirement board (board) as a reach and apply
defendant in order to recover the former chief's accumulated retirement
fund contributions, and in which the insurer and the former chief reached a
settlement, to which the board was not a party, under which the board
would pay a certain amount of the former chief's accumulated deductions
to the insurer and the remainder to the former chief, the judge erred in
ordering the board to make any payment to the former chief, where he had
been convicted of offenses involving the funds or property of a
governmental unit, and therefore, the provisions of G. L. c. 32, § 15(3),
applied, under which he was ineligible to receive any allowance, benefit,
or refunded contribution until he made full restitution, which he had not;
however, the judge properly ordered the board to pay the insurer the
amount it negotiated under the settlement agreement with the former chief,
where, pursuant to G. L. c. 32, § 19, the former chief was empowered to
assign to the city any portion of his accumulated retirement deductions as
partial restitution of the amounts he had embezzled, and the insurer, as
subrogee, stood in the shoes of the city for this purpose. [95-99]

CIVIL ACTION commenced in the Superior Court Department on
June 29, 1995.

A motion to enforce a settlement agreement was heard by
*Elizabeth Butler,* J.

*Gregory F. Galvin* for Brockton Retirement Board.

[1]Brockton Retirement Board, reach and apply defendant.

*John B. Harkavy* for the plaintiff.

COWIN, J. We consider the rights of several parties to the accumulated retirement deductions of former Brockton Police Chief Richard Sproules, the defendant, following his pleas of guilty to, and convictions of, various offenses committed while he was in office. Pursuant to a settlement agreement between the plaintiff insurer and the defendant, a judge of the Superior Court ordered the reach and apply defendant, Brockton Retirement Board (the board), to pay $17,321.08 to the plaintiff and the remainder of the defendant's accumulated deductions ($14,999.94) to him. The board, which was not a party to the settlement agreement and which opposed the order to pay the deductions, appealed.[2] We affirm that portion of the order that directs the board to pay $17,321.08 to the plaintiff, but reverse that portion that directs payment of the balance to the defendant.

1. *Background.* The facts and prior proceedings are not disputed. On June 28, 1990, the defendant pleaded guilty to indictments for larceny of a controlled substance, G. L. c. 94C, § 37; attempting to procure perjury, G. L. c. 268, § 3; intimidation of a witness, G. L. c. 268, § 13B; and fraud or embezzlement by a city, town, or county officer, G. L. c. 266, § 51. The city of Brockton was insured by the plaintiff with respect to losses arising from such activities and submitted to the plaintiff two proofs of loss totaling $171,763.51.[3] Pursuant to the insurance contract, the plaintiff paid the city a total of $92,866.62 and received an assignment of the city's rights against the defendant. The plaintiff then commenced the present action against the defendant for reimbursement, joining the board as reach and apply defendant in order to recover approximately $32,000 in the defendant's accumulated contributions to the Brockton retirement fund. This led to the settlement dividing

[2]We acknowledge the plaintiff's point that the board's appeal was taken from the judge's order, rather than from a judgment that, in fact, has never been entered. Because nothing is pending that might alter the order in question between its entry and the entry of a final judgment, see *Hodge* v. *Klug*, 33 Mass. App. Ct. 746, 750-751 (1992), we choose to deal with the merits. See *GTE Prods. Corp.* v. *Stewart*, 421 Mass. 22, 24 n.3 (1995).

[3]The city alleged that the defendant had in fact absconded with an even greater amount, but some was recovered prior to claims under the insurance policy.

the contributions; the judge's order directing the board to pay in accordance with the settlement; and the board's appeal.

2. *Discussion.* On appeal the board argues essentially that the plaintiff, exercising the rights of the defendant, a retirement system member, was required under G. L. c. 32, § 15,[4] before seeking relief in court, to engage in an administrative proceeding in which the board would have had an opportunity, before there was any repayment of retirement contributions, to determine whether the defendant had made full restitution, including the costs of any relevant investigation. For this proposition the board relies specifically on G. L. c. 32, § 15(1), as appearing in St. 1945, c. 658, § 1, which provides for the forfeiture of both a retirement allowance and retirement contributions by those found by the board to have misappropriated government funds, such forfeiture to be "to the extent of the amount so found to be misappropriated and to the extent of the costs of the investigation, if any, as found by the board." It follows, the board asserts, that the Superior Court prematurely ordered the release of retirement funds prior to the board making administrative determinations that, given the extent of the misappropriations and the costs associated with investigating them, might have resulted in neither of the parties being entitled to anything.

We agree that the board has an independent interest in the amounts at issue and that the parties may not bargain that interest away in contravention of the statutory scheme by means of a settlement in which the board does not participate. However, at least on this record, we adopt an analysis that differs somewhat from that urged by the board. It is helpful, in this regard, to examine the language and apparent purpose of the applicable statutory provisions.

General Laws c. 32, § 15, entitled "Dereliction of duty by members," consists of five subsections and governs the consequences to their retirement rights that flow from the commission of certain criminal offenses by public employees. Subsection (1), on which the board principally relies, applies to those situations in which a member of the retirement system

---

[4]General Laws c. 32, § 15, is set forth in its entirety in an appendix to this opinion.

"has been charged with the misappropriation of funds or property of any governmental unit" in which he is or was employed.[5] Note that subsection (1) governs the employees in question when *charges* of misappropriation are pending, although it may also apply after conviction of an offense under G. L. c. 32, § 15(3). See *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. 1, 5 (1996). In such circumstances, the appropriate retirement board conducts a hearing.[6] "If the board after the hearing finds the charges to be true, such member shall forfeit all rights . . . to a retirement allowance or to a return of his accumulated total deductions for himself and for his beneficiary, or to both, to the extent of the amount so found to be misappropriated and to the extent of the costs of the investigation, if any, as found by the board."

Subsection (2) of G. L. c. 32, § 15, governs the initiation of the proceedings referred to in subsection (1). The remaining three subsections establish the consequences of *convictions* of various criminal offenses (as opposed to merely the *charges* as treated in the first subsection). See *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. at 3-5. Subsection (3), as appearing in St. 1945, c. 658, § 1, entitled "Forfeiture of Rights upon Conviction," denies a retirement allowance or benefits to any member or beneficiary or a return of retirement contributions, "after final conviction [of such member] of an offense involving the funds or property of a governmental unit or system referred to in subdivision (1) of this section . . . unless and until full restitution[7] for any such misappropriation has been made."

Subsection (3A), as inserted by St. 1982, c. 630, § 20, also entitled "Forfeiture of rights upon conviction," applies only in

---

[5]The subsection applies also when there has been a charge that the employee misappropriated funds or property "of any [retirement] system of which he is a member."

[6]Subsection (1) provides that the hearing comes about as the result of a written request by the affected member. Subsection (2), however, makes clear that the proceeding may be initiated either by the retirement board itself or by the agency or governmental unit by which the member is or was employed.

[7]Because it is not necessary to a resolution of the present dispute, we do not address what losses or other costs are embraced by the term "full restitution."

circumstances where a member has been finally convicted of certain specified offenses, i.e., those set forth in either G. L. c. 268A, § 2, or G. L. c. 265, § 25, pertaining to police or licensing duties.[8] Subsection (3A) does not apply in other situations. *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 687-688 (1986). Where it is applicable, it imposes a blanket restriction against the payment of a retirement allowance or benefits and the return of retirement contributions, in the event of a final conviction of any of the enumerated offenses. Restitution is not an issue because the member is precluded from receiving anything in any event.

Subsection (4), as inserted by St. 1987, c. 697, § 47, entitled "Forfeiture of pension upon misconduct," provides that a member's final conviction "of a criminal offense involving violation of the laws applicable to his office or position" shall prevent the payment of any retirement allowance or benefit. Retirement contributions are, however, returned to the member, albeit without interest. Subsection (4) effects a pension forfeiture as "an automatic legal consequence of conviction of certain offenses." *MacLean* v. *State Bd. of Retirement*, 432 Mass. 339, 343 (2000) (conviction of violation of conflict of interest provisions of G. L. c. 268A, § 7).

Finally, reference should be made to G. L. c. 32, § 19, as appearing in St. 1973, c. 1128, § 1, which provides, in relevant part: "No assignment of any right in or to any funds, annuities, pensions or retirement allowances under any [retirement] system shall be valid except such assignment as may be made for the purpose of making restitution in the case of dereliction of duty by any member as set forth in section fifteen."[9]

A review of these statutes demonstrates that various legislative objectives are present. Where the culpability of the public employee has been established by means of a final conviction, it is the Legislature's intention that certain retirement consequences follow automatically, *McLean* v. *State Bd. of Retire-*

---

[8]General Laws c. 268A, § 2, among other things, criminalizes the offering to, and acceptance by, public employees of gifts with the intent that official acts be influenced thereby. General Laws c. 265, § 25, criminalizes certain extortions by threat.

[9]Certain other assignments not relevant to our analysis are also permitted.

*ment*, 432 Mass. at 342, 343, with those consequences differing depending on the nature of the violations. Certain of the consequences are punitive in nature, such as the automatic disqualification of the employee with respect to a retirement allowance, benefits, or a return of contributions, that takes place under G. L. c. 32, § 15(3A), or the automatic disqualification with respect to a retirement allowance or benefits pursuant to G. L. c. 32, § 15(4). A central purpose is that those who have misappropriated public funds not be enriched further by the receipt of payments from their retirement systems, at least until restitution of the amounts stolen has been made.

In contrast to the automatic consequences visited upon the convicted employee under subsections (3), (3A), and (4), the deprivation of retirement rights that is triggered under subsection (1) is dependent on an administrative determination. Thus, a retirement system member who has been *charged* with, but not convicted of, misappropriation of funds of the governmental unit by which he is, or was, employed, or of the retirement system of which he is a member, may be required to forfeit retirement rights, including a return of contributions, "to the extent of the amount so found to be misappropriated and to the extent of the costs of the investigation, if any, as found by the board." We need not struggle with the question of what costs are contemplated by this phrase. To the extent that the board relies on subsection (1) for its position in this case, that reliance is misplaced. Where, as here, there has been a *conviction*, no administrative fact finding regarding commission of the offense is necessary, and the automatic consequences of subsections (3), (3A), or (4) follow, depending on which subsection is applicable.

Applying these criteria to the present case, it is clear that, at a minimum, G. L. c. 32, § 15(3), applies. That subsection suspends the retirement rights of any member finally convicted[10] "of an offense involving the funds or property of a governmental unit" by which he was employed until full restitution is made. The city represents that it incurred losses at the hands of the

---

[10]The record indicates that at one point the defendant intended to seek a vacating of his guilty pleas. Absent success on such a motion, we apply the statute on the premise that there is a final conviction in place.

defendant that were in excess of $171,000, with approximately $93,000 being reimbursed by insurance. The defendant does not challenge these figures, and it is obvious that he has not restored the amounts that he embezzled. It follows that an administrative proceeding under G. L. c. 32, § 15(1), to determine an amount of restitution would be purposeless. The defendant is ineligible under G. L. c. 32, § 15(3), to receive any allowance, benefit, or refunded contribution, and it was error for the Superior Court judge to order the board to make any payment to him.[11]

This, however, does not affect the right of the plaintiff to retain what it has received pursuant to its settlement with the defendant. General Laws c. 32, § 19, permits an assignment of retirement funds "for the purpose of making restitution in the case of dereliction of duty by any member as set forth in section fifteen." Consequently, the defendant was empowered to assign to the city any portion of his accumulated retirement deductions as partial restitution of the embezzled amounts. The plaintiff, as subrogee, stands in the shoes of the city for this purpose, and use of the retirement contributions to reimburse the plaintiff in part for what it has paid to the city is wholly consistent with the language and purposes of G. L. c. 32, §§ 15 and 19.[12]

3. *Disposition.* That portion of the order of the Superior Court that directs the payment by the board to the plaintiff of $17,321.08 is affirmed. The remainder of the order is reversed. The plaintiff's request for attorney's fees on appeal, see *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1989), is denied.

*So ordered.*

---

[11]We do not suggest that G. L. c. 32, § 15(3), is the only subsection implicated. The various subsections do not create mutually exclusive alternatives. See *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. at 5. It may be that subsection (4), applicable to a final conviction "of a criminal offense involving violation of the laws applicable to [the defendant's] office or position," with its automatic loss of retirement allowance or benefits, will also govern. It is unnecessary to decide that in order to resolve the issues raised by the present appeal.

[12]We are aware of nothing in the record that would make separate enforcement of the plaintiff's rights under the settlement agreement improper. The board has not so argued, and any possible claim to this effect on the part of the defendant has been waived by his failure to participate in the appeal.

APPENDIX.

General Laws c. 32, § 15. Dereliction of duty by members.

"(1) *Misappropriation of Funds.* Any member who has been charged with the misappropriation of funds or property of any governmental unit in which or by which he is employed or was employed at the time of his retirement or termination of service, as the case may be, or of any system of which he is a member, and who files a written request therefor shall be granted a hearing by the board in accordance with the procedure set forth in subdivision (1) of section sixteen. If the board after the hearing finds the charges to be true, such member shall forfeit all rights under sections one to twenty-eight inclusive to a retirement allowance or to a return of his accumulated total deductions for himself and for his beneficiary, or to both, to the extent of the amount so found to be misappropriated and to the extent of the costs of the investigation, if any, as found by the board. He shall thereupon cease to be a member, except upon such terms and conditions as the board may determine.

"(2) *Initiation of Proceedings.* Proceedings under this section may be initiated by the board, by the head of the department, by the commission or board of the commonwealth or of any political subdivision thereof wherein the member is employed or was last employed if not then in service, or in a county by the county commissioners, in a city by the mayor, in a town by the board of selectmen, in the Massachusetts Turnpike Authority by the authority, in the Massachusetts Housing Finance Agency by the agency, in the Massachusetts Port Authority by the authority, in the Greater Lawrence Sanitary District by the district, in the Blue Hills Regional School System by the system or in the Minuteman Regional Vocational Technical School District by the district. The procedure set forth in subdivision (1) of section sixteen relative to delivery of copies, statement of service thereof, notice, hearing, if requested and the filing of a certificate of findings and decision, so far as applicable, shall apply to any proceedings under this section.

"(3) *Forfeiture of Rights upon Conviction.* In no event shall any member after final conviction of an offense involving the funds or property of a governmental unit or system referred to in subdivision (1) of this section, be entitled to receive a retirement allowance or a return of his accumulated total deductions under the provisions of sections one to twenty-eight inclusive, nor shall any beneficiary be entitled to receive any benefits under such provisions on account of such member, unless and until full restitution for any such misappropriation has been made.

"(3A) *Forfeiture of rights upon conviction.* In no event shall any member after final conviction of an offense set forth in section two of chapter two hundred and sixty-eight A or section twenty-five of chapter two hundred and sixty-five pertaining to police or licensing duties be entitled to receive a retirement allowance or a return of his accumulated total deductions under the provisions of sections one to twenty-eight, inclusive, nor shall any beneficiary be entitled to receive any benefits under such provisions on account of such member.

"(4) *Forfeiture of pension upon misconduct.* In no event shall any member after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance under the provisions of section one to twenty-eight, inclusive, nor shall any

beneficiary be entitled to receive any benefits under such provisions on account of such member. The said member or his beneficiary shall receive, unless otherwise prohibited by law, a return of his accumulated total deductions; provided, however, that the rate of regular interest for the purpose of calculating accumulated total deductions shall be zero."